```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                           EASTERN DIVISION
```

**STEPHEN W. BYERLY,**

        **Plaintiff,**

    vs.                                      **Civil Action 2:13-cv-411**
                                                          **Judge Sargus**
                                                          **Magistrate Judge King**

**ROSS CORRECTIONAL INSTITUTION,**
*et al.*,

        **Defendants.**

                    **REPORT AND RECOMMENDATION**

      Plaintiff, an inmate currently incarcerated at Ross Correctional Institution ("RCI"), brings this civil action under 42 U.S.C. § 1983, alleging that defendants Bradley and Pence, the only defendants named in the *Second Amended Complaint*, ECF 27, denied plaintiff access to the courts.  This matter is before the Court on *Defendants' Motion for Summary Judgment*, ECF 44 ("*Defendants' Motion*").  For the reasons that follow, it is **RECOMMENDED** that *Defendants' Motion* be **GRANTED**.

**I.    BACKGROUND**

      The Ohio Department of Rehabilitation and Correction ("ODRC") has promulgated rules and policies to manage and direct its operations, including Policy 59-LEG-01.  *See Exhibit 4*, PAGEID#:423 (copy of Policy 59-LEG-01, "Inmate Access to Court and Counsel," effective February 14, 2013).  Under this policy, ODRC permits inmates to keep legal materials within a 2.4 cubic foot locker box in their cells, which is known as the "2.4 requirement."  *See* Policy 59-LEG-

01(VI)(E)(2), at PAGEID#:426; *Declaration of Jonathan R. Pence*, ¶ 4, attached as *Exhibit 4* to *Defendants' Motion* ("*Pence Declaration*").[1] Inmates may not store in their cell any additional materials that do not fit within this box. *Pence Declaration*, ¶ 4. Inmates may request permission to store excess materials in a secure location designated by the unit's managing officer. *Id*. *See also* Policy 59-LEG-01(VI)(E)(5). In RCI, excess legal materials are stored in a locker box in a vault ("C-section vault" or "vault"), which is located in the center of RCI's Unit H-1, a general population cellblock. *Pence Declaration*, ¶¶ 5, 9, 11. However, "[i]nmates requesting additional space must first make reasonable efforts to reduce the amount of legal material in their possession." Policy 59-LEG-01(VI)(E)(5)(c). "Additional space granted to an inmate is subject to review every 60 days[.]" *Id*. at (VI)(E)(6).

On April 3, 2013, defendant Charles Bradley, then RCI's Deputy Warden of Operations, received an informal complaint signed by plaintiff, who resided in RCI's Unit H-1. *Exhibit 1* (plaintiff's informal complaint dated April 3, 2013, number RCI-04-13-000047 ("first informal complaint")), attached to *Defendant's Motion*; *Pence*

---

[1] Plaintiff apparently disputes that this version of Policy 59-LEG-01 applies to him, asserting instead that an earlier version effective September 6, 2010, is applicable. *See Contra – to Defendant's* [sic] *Motion for Summary Judgement* [sic], ECF 59, PAGEID#:608 ("*Memo. Contra.*"); "Affidavits" dated August 28, 2014, PAGEID#:634-PAGEID#:635 ("*Plaintiff's First Affidavit*") and PAGEID#:636 – PAGEID#:639, PAGEID#:641-PAGEID#:644, which are apparently duplicates of a second affidavit ("*Plaintiff's Second Affidavit*"), attached thereto. For present purposes only and for ease of reference, the Court notes that both proffered versions contain the 2.4 requirement. Policy 59-LEG-01(VI)(E)(2), at PAGEID#:426; Policy 59-LEG-01(VI)(E)(2), at PAGEID#:652, attached to *Memo. Contra*.

*Declaration*, ¶¶ 5, 7; *Declaration of Charles Bradley*, ¶ 5, attached as *Exhibit 2* to *Defendant's Motion* ("*Bradley Declaration*").  In his informal complaint, plaintiff argued that RCI's enforcement of Policy 59-LEG-01 denied him access to the courts; he insisted that he be permitted to keep legal papers in excess of the 2.4 requirement in his cell.  *Exhibit 1*; *Bradley Declaration*, ¶ 5.  On the same day, defendant John Pence, RCI's Unit Management Chief, advised plaintiff that his excess legal papers must be stored in the vault or discarded/mailed out:

> Per the discussion you had with Mr. Pence on 4-03-13 RCI will follow 59-LEG-01.  By Monday, April 8th [2013] you will be required to store all your extra current legal property in the Unit Vault.  Or you can destroy/mail out the extra property – your choice.  Mr. Pence said you elect to have it stored.

*Exhibit 1*, at PAGEID#:412 (containing defendant Pence's handwritten response to plaintiff's informal complaint).  *See also Pence Declaration*, ¶¶ 2, 7.  Defendant Bradley, defendant Pence's supervisor at that time, approved this resolution of plaintiff's informal complaint.  *Exhibit 1*, at PAGEID#:412; *Bradley Declaration*, ¶¶ 6-7; *Pence Declaration*, ¶ 7; April 3, 2013 informal complaint, PAGEID#412.  Plaintiff did not pursue an administrative appeal from this decision.  *Declaration of Eugene Hunyadi*, ¶¶ 2, 8, attached as *Exhibit 9* to *Defendants' Motion* ("*Hunyadi Declaration*");[2] *Exhibit 10*, at PAGEID#:451-PAGEID#:452 (a print-out of plaintiff's complaints and grievances) ("grievance history").

---

[2] Mr. Hunyadi is ODRC's Assistant Chief Inspector whose duties include handling appeals and direct grievances filed by inmates.  *Id*. at ¶ 2.

3

In early June 2013, plaintiff verbally complained about RCI's enforcement of Policy 59-LEG-01 to Unit Manager, J.R. Byrd, and to RCI's former Warden, Mick Oppy. *Declaration of J.R. Byrd*, ¶ 5, ("*Byrd Declaration*"); *Declaration of Mick Oppy*, ¶ 4, ("*Oppy Declaration*"), attached as *Exhibits 5* and *6*, to *Defendant's Motion*.[3] Following plaintiff's meeting with former Warden Oppy and Manager Byrd on June 5, 2013, former Warden Oppy exempted plaintiff from the 2.4 requirement and permitted plaintiff to keep excess legal papers in his cell. *Byrd Declaration*, ¶¶ 7-8; *Oppy Declaration*, ¶ 5; *Exhibit 7* (plaintiff's informal complaint dated August 12, 2013, number RCI-09-13-000060 ("second informal complaint")), attached to *Defendant's Motion*.

On August 12, 2013, plaintiff filed a second informal complaint, complaining that he had not received a written exemption regarding the 2.4 requirement from former Warden Oppy following their conversation on June 5, 2013. *Exhibit 7*. Plaintiff submitted this informal complaint directly to "Warden by Inst. Inspector." *Id*. at PAGEID#:437. The institutional inspector notified plaintiff that he, as institutional inspector, could not respond to an informal complaint under Ohio Administrative Code 5120-9-31 (addressing the inmate grievance procedure) and advised plaintiff to re-file his complaint with the unit manager. *Id*.

Thereafter, plaintiff filed a third informal complaint directly

---

[3] Former Warden Oppy served as RCI's warden from approximately November 2012 until November 2013. *Oppy Declaration*, ¶ 3.

4

with Manager Byrd, complaining again that he had not received the written exemption. *Exhibit 8* (plaintiff's informal complaint dated August 28, 2013, number RCI-09-13-000041 ("third informal complaint")), attached to *Defendant's Motion*. On September 6, 2014, Manager Byrd advised plaintiff to re-file his informal complaint with defendant Pence. *Id.*; *Byrd Declaration*, ¶ 9. Defendant Pence does "not recall receiving or handling any follow-up complaints regarding Byerly's excess materials or the storage of the materials." *Pence Declaration*, ¶ 13.

In November 2013, former Warden Oppy and defendant Bradley were assigned to work at a facility other than RCI. *Oppy Declaration*, ¶ 3; *Bradley Declaration*, ¶ 2. New RCI Warden Rod Johnson decided to enforce the 2.4 requirement against plaintiff. *Pence Declaration*, ¶ 13; *Byrd Declaration*, ¶ 8. Accordingly, beginning in late May 2014, RCI insisted that plaintiff store his excess legal materials outside his cell in the vault. *Id*.

In this civil action under 42 U.S.C. § 1983, plaintiff alleges that defendants Pence and Bradley have denied him access to the courts. *Second Amended Complaint*, ECF 27. Defendants have moved for summary judgment, *see Defendants' Motion*, which plaintiff has opposed. *Memo. Contra*.[4] No reply has been filed.

## II.   STANDARD

The standard for summary judgment is well established. This

---

[4] When plaintiff did not respond to *Defendants' Motion* within rule, the Court warned plaintiff of the consequences of failing to respond and extended the deadline for filing a response to *Defendants' Motion*. *Order*, ECF 51.

standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  *Anderson,* 477 U.S. at 251.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  *Catrett,* 477 U.S. at 323.  Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S.

at 250 (quoting former Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir. 1995)("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial").  "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on the pleadings or merely reassert the previous allegations.  It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'" *Glover v. Speedway Super Am. LLC,* 284 F. Supp.2d 858, 862 (S.D. Ohio 2003)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, the non-moving party must support the assertion that a fact is genuinely disputed.  Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Glover,* 284 F. Supp.2d at 862 (citing *InteRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989)).  Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id. See also* Fed. R. Civ. P. 56(c)(3).

**III. DISCUSSION**

Defendants argue that plaintiff's claims cannot proceed because he failed to exhaust his administrative remedies before filing this

7

action.  The Prison Litigation Reform Act requires that a prisoner filing a claim under federal law relating to prison conditions must first exhaust available administrative remedies.  *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  The statute provides, in pertinent part:

> No action shall be brought with respect to prison conditions under [section 1983 of this title], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

In order to satisfy this exhaustion requirement, an inmate plaintiff must "complete the administrative review process in accordance with the applicable procedural rules[.]"  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  "Failure to exhaust is an affirmative defense under the PLRA, and [] inmates are not required to specifically plead or demonstrate exhaustion in their complaints."  *Jones v. Bock*, 549 U.S. 199, 216 (2007).  Exhaustion is not a jurisdictional predicate but the requirement is nevertheless mandatory, *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999), even if proceeding through the administrative procedure would appear to the inmate to be "futile." *Hartsfield v. Vidor*, 199 F.3d 305, 308-10 (6th Cir. 1999).

Ohio has established a procedure for resolving inmate complaints.  Ohio Admin. Code § 5120-9-31.  The procedure is available to an inmate "regardless of any disciplinary status, or other administrative or legislative decision to which the inmate may be subject," O.A.C. § 5120-9-31(D), and is intended to "address inmate complaints related to

8

any aspect of institutional life that directly and personally affects the grievant," including "complaints regarding policies, procedures, conditions of confinement. . . ." O.A.C. § 5120-9-31(A).  Certain matters are not grievable, however, including "complaints unrelated to institutional life, such as legislative actions, policies and decisions of the adult parole authority, judicial proceedings and sentencing or complaints whose subject matter is exclusively within the jurisdiction of the courts or other agencies."  O.A.C. § 5120-9-31(B).

Ohio employs a three-step grievance procedure.  First, an inmate must file an informal complaint within fourteen days of the event giving rise to the complaint.  O.A.C. § 5120-9-31(K)(1).  The informal complaint must be filed "to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." *Id.*  If the informal complaint is resolved in a manner that is unsatisfactory to the inmate, he must file a notification of grievance with the inspector of institutional services within fourteen days.  O.A.C. § 5120-9-31(K)(2).  If the inmate is dissatisfied with the disposition of the grievance, he must then appeal to the office of the chief inspector within fourteen days.  O.A.C. § 5120-9-31(K)(3).  "The decision of the chief inspector or designee is final."  *Id.*  Remedies for valid grievances include "changes to institutional policies or procedures, the implementation of new policies or procedures, and/or corrective action specific to the inmate's complaint."  O.A.C. § 5120-9-31(L).

Plaintiff's claim against defendants is subject to the grievance procedure because it relates to a condition of confinement. *See* O.A.C. § 5120-9-31(A). The uncontroverted evidence establishes that plaintiff did not timely appeal the denial of his first informal complaint and did not properly file or appeal his second and third informal complaints. More specifically, the applicable rules required plaintiff to file a notification of grievance with the institutional inspector within fourteen days of the denial of his first informal complain, or by April 17, 2013. O.A.C. § 5120-9-31(K)(2). The present record establishes that plaintiff did not do so. *See Hunyadi Declaration*, ¶ 8; *Exhibit 10*, at PAGEID#:451-PAGEID#:452; *Bradley Declaration*, ¶ 9[5] (averring that "[a]fter signing off on the April 3rd informal complaint, I was not involved with further issues concerning Byerly's extra legal materials at RCI"); *Pence Declaration*, ¶¶ 7, 13 (averring that he does not recall receiving or handling any follow-up complaints regarding plaintiff's excess legal materials following the denial of the first informal complaint on April 3, 2013).

Plaintiff has offered a copy of an informal complaint allegedly submitted on November 8, 2013, ECF 60, at PAGEID#:661, and a "Notice of Grievance" dated November 8, 2013, ECF 60, at PAGEID#:663-PAGEID#:668, both of which apparently address plaintiff's informal complaint that was denied on April 3, 2014. Although these documents were not filed with the *Memo. Contra,* the Court presumes that

---

[5] The *Bradley Declaration* contains two paragraphs numbered 9. The quoted portion refers to the second paragraph 9.

10

plaintiff proffers them as evidence of his appeal from the denial of his first informal complaint. *See also Memo. Contra*, at PAGEID#:615 (asserting, not under oath, that plaintiff filed a grievance related to his informal complaint of April 3, 2013), PAGEID#:618 (arguing that defendants' exhibits do not contain the "original" informal complaint, which plaintiff purportedly sent to the Court). This submission is unavailing for several reasons. First, these documents have not been authenticated and therefore cannot be considered at the summary judgment stage. *See* Fed. R. Civ. P. 56(c)(2). *See also David A. Flynn, Inc. v. GMAC*, No. 08-3815, 345 Fed. Appx. 974, at *978-79 (6th Cir. Sept. 24, 2009) ("[U]nauthenticated documents do not meet the requirements of Rule 56(e)."); *Fox v. Mich. State Police Dep't*, No. 04-2078, 173 Fed. Appx. 372, at *375 (6th Cir. 2006) (affirming decision to disregard documents that "were neither sworn nor certified, were not properly authenticated and were therefore inadmissible in evidence").[6] In any event, these documents are dated November 8, 2013 – months after defendants' April 3, 2013 denial of plaintiff's first informal complaint and long after the deadline for filing a timely appeal. ECF 60, at PAGEID#:661, PAGEID#:663; O.A.C. § 5120-9-31(K)(2). Moreover, plaintiff apparently directed these documents to the wrong person. *See* ECF 60, at PAGEID#:661 (directing informal complaint to "Chief Inspector – Office Super."); *id*. at PAGEID#:663 (directing "Notice of Grievance" to "Chief [sic] Inspector

---

[6] The Court notes, *inter alia*, that the grievance history authenticated by My Hunyadi does not indicate that plaintiff filed a notification of grievance related to the first informal complaint in November 2013. *Exhibit 10*, at PAGEID#:451.

11

Office – Suppervisor [sic]"). In short, the documents proffered by plaintiff, ECF 60, do not establish that plaintiff properly appealed his first informal complaint. The Court is therefore persuaded that plaintiff failed to exhaust his administrative remedies as they relate to his first informal complaint.

Plaintiff filed his second informal complaint on August 12, 2013, complaining that former Warden Oppy failed to provide a written exemption following their discussion on June 5, 2013. *Exhibit* 7. This filing was defective for at least two reasons. First, the applicable rules require plaintiff to file an informal complaint within fourteen days of the event complained of, in this instance by June 19, 2013. *See* O.A.C. § 5120-9-31(K)(1). The uncontroverted evidence establishes that plaintiff did not file the second informal complaint by that deadline. *See Exhibit 7; Exhibit 10*, at PAGEID#:451. Moreover, the second informal complaint was filed with the wrong person. Plaintiff filed the second informal complaint directly with the "Warden by Inst. Inspector. *Exhibit* 7. However, under the applicable rules, plaintiff was required to file that informal complaint with "the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." O.A.C. § 5120-9-31(K)(1). The institutional inspector advised plaintiff to re-file this informal complaint with the unit manager. *Exhibit 7.* Plaintiff did not, apparently, do so nor does it appear that plaintiff filed a notification of grievance appealing that informal complaint. *Exhibit 10*, at PAGEID#:751. *See*

12

*also Bradley Declaration*, ¶ 9[7] (averring that "[a]fter signing off on the April 3rd informal complaint, I was not involved with further issues concerning Byerly's extra legal materials at RCI"); *Pence Declaration*, ¶¶ 7, 13 (averring that, other than handling the first informal complaint on April 2, 2013, he does not recall receiving or handling any follow-up complaints regarding plaintiff's excess materials or storage of those materials).

Plaintiff also filed his third informal complaint on August 28, 2014, with the wrong person. *Exhibit 8*, PAGEID#:439; *Byrd Declaration*, ¶ 9. Although Manager Byrd advised plaintiff to re-file that informal complaint directly with defendant Pence, *Byrd Declaration*, ¶ 9, the uncontroverted evidence establishes that plaintiff did not re-file that informal complaint with defendant Pence or otherwise attempt to appeal this decision. *Pence Declaration*, ¶¶ 7, 13; *Hunyadi Declaration*, ¶ 8; *Exhibit 10*, at PAGEID#:451.

In short, the Court concludes that plaintiff failed to exhaust his available administrative remedies prior to filing this action. See 42 U.S.C. § 1997e(a). Defendants are therefore entitled to summary judgment on plaintiff's claims.

**WHEREUPON**, it is **RECOMMENDED** that *Defendants' Motion for Summary Judgment*, ECF 44, be **GRANTED**, and that this action be dismissed without prejudice for failure to exhaust available administrative

---

[7] The quoted portion above refers to the second paragraph 9 of the *Bradley Declaration*.

remedies.[8]

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


November 6, 2014                           *s/Norah McCann King*
                                            Norah McCann King
                                       United States Magistrate Judge

---

[8] Having so concluded, the Court need not, and does not, address defendants' alternative bases for summary judgment.

14